W. R. JAGOE ET AL *v.* CARRIER LUMBER AND MANU-
FACTURING CO.

[81 South. 132, Division B, No. 20546.]

ADVERSE POSSESSION. *Wild lands. Sufficiency of evidence.*
  Under the facts in this case, which was a contest in equity over
  the title to a tract of wild land between plaintiffs who had a
  perfect paper title, and had been in adverse possession of the
  land for many years, on the one side, and a lumber company,
  which, having failed in negotiations to purchase the land from the
  parties in possession, bought up an old tax title standing in
  the name of a third party, the court held that the evidence
  showing adverse possession by the plaintiff was sufficient to
  entitle them to a decree.

APPEAL from the chancery court of Panola county.
HON. J. G. McGOWEN, Chancellor.

Suit by W. R. Jagoe and another against The Carrier
Lumber & Manufacturing Company. From a decree for
defendants, plaintiffs appeal.

The facts are sufficiently stated in the opinion of the
court.

*Lomax B. Lamb,* for appellants.

*J. B. Harris,* and *Shands & Montgomery,* for appellee.

STEVENS, J., delivered the opinion of the court.

This is a contest in equity over the title to the north
half of section 26, township 9, range 9 west, in Panola
county. Appellee claims title under a deed from the
sheriff and tax collector to the liquidating levee board,
May 31, 1872, purporting to be for delinquent levee
taxes, and made under the acts of 1866-67, p. 237; and
upon this title appellee won in the lower court. Ap-
pellants rely upon their perfect paper title and also

upon title conferred, as alleged, by adverse possession. There are several law points, presented and elaborately argued on this appeal; but the proper disposition of this case turns, we think, upon the plea of adverse possession. The lands in controversy are situated between the Tallahatchie and Cold Water rivers in Panola county, in a vast territory of wild, timbered and uncultivated lands, most of which is subject to overflow, and all of which at various seasons of the year, if not actually under water, is "cut off almost from civilization," as one witness has expressed it. On account of their location, inaccessibility or remoteness from improved highways, towns, or railroad points, these lands have not been subject to profitable cultivation, but, as expressed by one witness, it "has been infinitely more profitable and practical for the owner of the land in controversy to have preserved the land as timber, instead of cultivating the same." The lands are situated about a mile or two from what is known as "Cook's Water Hole," a well-known resort for expert huntsmen and heretofore rather famous as a retreat for bear.

In the trial of this case before the learned Chancellor, there was no material conflict in the testimony as to adverse possession. The Chancellor found that the evidence was insufficient to make out a case of adverse possession. It would prolong this opinion to relate in detail the facts or testimony tending to prove adverse possession. The testimony, which we have carefully examined, is, in our judgment, sufficient to confer title by adverse possession. The uncontradicted proof shows that the lands at the time they were sold for levee taxes in 1872 were owned by O. Harrison. Ever since the date of this deed, appellants and their predecessors in title, reaching back to the heirs of O. Harrison, have had the lands assessed to them and paid all taxes due, and constantly exercised such acts of ownership over the lands as an owner would expect to do or naturally would do with property of this kind. *McCaughn* v. *Young,* 85

Miss, 277, 37 So. 839 applies. The lands were first known as the "Goff lands," and then as "Jagoe and Martin lands." Even appellee and its predecessors in title knew that the lands were claimed by appellants and were generally known as the property of appellants. In fact, appellee was negotiating for the purchase of these lands when this old tax deed for levee taxes was found outstanding in Delta & Pine Land Company, and accordingly in June, 1915, a few days prior to the institution of this suit, appellee company purchased from the Delta & Pine Land Compay, apparently with the express purpose of contesting the title with the very parties with whom they were then negotiating for a conveyance. On the whole record, equity and justice are with the appellants, and we, without doubt, so decree.

Let the decree of the Chancellor be reversed, and a final decree entered here in favor of appellants, dismissing the original bill and adjudging title by adverse possession in appellants.

*Reversed, and decree here.*